UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X

FELIX MENDOZA, on behalf of himself and all
others similarly situated,

Civil Action No.:

Plaintiff,

**FLSA COLLECTIVE
COMPLAINT**

-against-

SUSHI PALACE, INC. d/b/a SUSHI PALACE,
JIKAI LIN and YI XIAO,

**JURY TRIAL REQUESTED**

Defendants.

---------------------------------------------------------------------------X

Plaintiff Felix Mendoza ("Plaintiff"), on behalf of himself and other similarly situated

employees, by and through their attorneys, The Law Offices of Yale Pollack, P.C. and The Law

Offices of Jacob Aronauer, complaining of Defendants Sushi Palace, Inc. d/b/a Sushi Place ("Sushi

Palace"), Jikan Lin ("Lin") and Yi Xiao ("Xiao") (collectively "Defendants"), alleges the

following:

## **NATURE OF THE ACTION**

1.       Plaintiff brings this action on behalf of himself and all similarly situated current

and former non-exempt workers who elect to opt-in to this action pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and specifically, the collective action provision

of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by

Defendants.  As well, Plaintiff, individually, seeks damages for Defendants' violation of §215 of

the FLSA based on the retaliation he was subjected to after complaining about his unpaid wages.

2.       Plaintiff also brings this action on behalf of all similarly situated current and former

employees of all restaurants owned and operated by Defendants pursuant to remedy violations of

the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.* and the supporting New York State

Department of Labor regulations.  As well, Plaintiff, individually, seeks damages for Defendants' violation of §215 of the NYLL based on the retaliation he was subjected to after complaining about his unpaid wages.  Further, Plaintiff seeks damages for Defendants' violations of the New York State Human Rights Law ("NYSHRL"), for disability discrimination.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c) and 217; and 28 U.S.C. § 1337.

4.      This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

**Plaintiff Felix Mendoza**

6.      Plaintiff is an adult individual residing in Nassau County, New York.

7.      From September 2017 until August 2022, Plaintiff was employed as a dishwasher at Sushi Palace located at 148 Middle Neck Road in Great Neck, New York 11201.

8.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

**Defendants Jikai Lin and Yi Xiao**

9.      Lin and Xiao (collectively the "Individual Defendants") are owners, principals and managers of Sushi Palace.

10.      At all relevant times, the Individual Defendants maintained control, oversight and the direction of Sushi Palace.

11.     The Individual Defendants held the power and authority to hire and fire employees, control employee work schedules, set employee wage rates, and maintain employee pay records.

12.     The Individual Defendants are persons engaged in business in Nassau County and are each sued individually in their capacity as an owner, officer and/or agent of Sushi Palace.

**Defendant Sushi Palace**

13.     Sushi Palace is a domestic corporation in the restaurant industry, having its principal place of business located at 148 Middle Neck Road in Great Neck, New York.

14.     At all times relevant to this action, Sushi Palace was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

15.     Upon information and belief, Sushi Palace has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

16.     Defendants jointly employed Plaintiff and similarly situated employees at all relevant times.

17.     Each Defendant has had substantial control over Plaintiff and similarly situated employees' working conditions and the practices alleged herein.

<b>COLLECTIVE ACTION ALLEGATIONS</b>

18.     Plaintiff brings Count One individually and on behalf all similarly situated persons who have worked as non-exempt workers at Sushi Palace, who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

19.     The FLSA Collective Plaintiffs consist of approximately twenty-five similarly situated current and former employees of Sushi Palace, who have been victims of Defendants'

policies and practices that have violated their rights under the FLSA by, *inter alia,* willfully denying them overtime wages.

20.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective Plaintiffs.

21.     Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective Plaintiffs were not paid the appropriate premium overtime compensation for all hours worked beyond 40 hours per workweek.

22.     All the work that Plaintiff and the FLSA Collective Plaintiffs have performed was assigned by Defendants, and/or Defendants have been aware of all work that Plaintiff and the FLSA Collective Plaintiffs have performed.

23.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective Plaintiffs. This policy and pattern or practice includes, but is not limited to:

> (a)     willfully failing to pay cooks, deliverymen, bussers, and food runners, including Plaintiff and the FLSA Collective Plaintiffs, the appropriate premium overtime wages for hours worked in excess of 40 hours per workweek; and
>
> (b)     willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective Plaintiffs, have worked for the benefit of Defendants.

24.     Defendants' unlawful conduct, as described in this Complaint, is pursuant to a company policy or practice of minimizing labor costs by failing to adequately compensate Plaintiff and the FLSA Collective Plaintiffs for the overtime hours worked.

25.     Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective Plaintiffs overtime premiums for hours worked in excess of 40 per workweek.

26.     Plaintiff and the FLSA Collective Plaintiffs perform or performed the same primary duties and were subject to the same policies and practices by Defendants.

27.     Defendants' unlawful conduct is widespread, repeated and consistent.

28.     There are many similarly situated current and former non-exempt workers who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the FLSA Collective Plaintiffs pursuant to 29 U.S.C. § 216(b).

29.     Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## PLAINTIFF'S FACTUAL ALLEGATIONS

### Allegations Common to All Plaintiffs

30.     Cooks, prep cooks, dishwashers and other kitchen employees regularly worked more than 40 hours per week for Defendants.

31.     Cooks, prep cooks, dishwashers and other kitchen employees regularly worked more than 40 hours per week for Defendants but were not paid time and one half for all overtime work as required under the FLSA and NYLL.

### Allegations as to Plaintiff Mendoza

32.     From on or about September 1, 2017 to August 28, 2022, with breaks in employment, Plaintiff worked for Defendants.

33.     Plaintiff's duties included dishwashing, maintaining the cleanliness of the restaurant, and assisting with food preparation.

34.     From on or about September 1, 2017 to on or about March 20, 2019 ("Time Period One"), Plaintiff worked six days a week on behalf of Defendants.

35.     For Time Period One, Plaintiff's work schedule was as follows: Mondays, Tuesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:00 p.m.; on Fridays and Saturdays, Plaintiff worked from 12 p.m. to 11 p.m.; and on Sundays, Plaintiff worked from 12:00 pm to 10:00 p.m.

36.     On or about March 20, 2019, Plaintiff resigned from Defendants.

37.     On or about June 6, 2019,  Plaintiff resumed working for Defendants.

38.     From June 6, 2019, until on or about March 17, 2020 ("Time Period Two"), Plaintiff worked six days a week on behalf of Defendants.

39.     Plaintiff's work schedule during Time Period Two was as follows:  on Mondays, Tuesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:00 p.m.; on Fridays and Saturdays, Plaintiff worked from 12 p.m. to 11 p.m.; and on Sundays, Plaintiff worked from 12:00 pm to 10:00 p.m. Plaintiff received a 1.5 hour break each day during this period.

40.     From March 17, 2020 until June 5, 2020 Sushi Palace was closed due to the Covid-19 pandemic.

41.     On June 6, 2020, Plaintiff resumed working for Defendants.

42.     From June 6, 2020, until on or about September 30, 2020 ("Time Period Three"), Plaintiff worked five days a week on behalf of Defendants.

43.     Plaintiff's work schedule during Time Period Three was as follows:  on Tuesdays and Wednesdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays,

Plaintiff worked from 12:00 p.m. to 10:00 p.m.; and on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

44.     From on or about October 1, 2020 to February 28, 2021 ("Time Period Four"), Plaintiff worked seven days a week on behalf of Defendants.

45.     Plaintiff's work schedule during Time Period Four was as follows: Mondays, Tuesdays, Wednesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays, Plaintiff worked from 12:00 p.m. to 10:00 p.m.; on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

46.     From on or about March 1, 2021, to on or about May 1, 2021 ("Time Period Five"), Plaintiff worked six days a week on behalf of Defendants.

47.     Plaintiff's work schedule during Time Period Five was as follows:  Tuesdays, Wednesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays, Plaintiff worked from 12:00 p.m. to 10:00 p.m.; and on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

48.     From May 2, 2021, until May 20, 2021 Plaintiff did not work for Defendants.

49.     On or about May 21, 2021, Plaintiff resumed working for Defendants.

50.      From May 21, 2021 until October 31, 2021 ("Time Period Six"), Plaintiff worked six days a week on behalf of Defendants.

51.     Plaintiff work schedule during Time Period Six was as follows: on Tuesdays, Wednesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays, Plaintiff worked from 12:00 p.m. to 10:00 p.m.; and on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

52.     From on or about November 1, 2021 until on or about February 28, 2022 ("Time Period Six"), Plaintiff worked seven days a week on behalf of Defendants.

53.     Plaintiff's work schedule during Time Period Six as follows: on Mondays, Tuesdays, Wednesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays, Plaintiff worked from 12:00 p.m. to 10:00 p.m.; and on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

54.     From on or about March 1, 2022 until on or about August 25, 2022 ("Time Period Seven"), Plaintiff worked six days a week on behalf of Defendants.

55.     Plaintiff's work schedule during Time Period Seven as follows: on Tuesdays, Wednesdays, and Thursdays, Plaintiff worked from 11:00 a.m. to 9:30 p.m.; on Fridays and Saturdays, Plaintiff worked from 12:00 p.m. to 10:00 p.m.; and on Sundays, Plaintiff worked from 12:00 p.m. to 9:30 p.m.

56.     On August 25, 2022, Plaintiff cut his finger while working. Plaintiff notified Xiao of his injury via text message.

57.     In this text message, Plaintiff requested assistance from Xiao.

58.     Xaio ignored Plaintiff's message.

59.     Despite his injury, Plaintiff continued working until 9:30 p.m., completing his workday.

60.     On August 28, 2022, Plaintiff was informed by a coworker that Defendants had found "a new person to do [Plaintiff's] job."

61.     Plaintiff's employment with Defendants ended on or about August 28, 2022.

**Plaintiff's Salary at Defendants**

62.     From on or about September 1, 2017, until on or about December 31, 2017, Plaintiff was paid a weekly wage of $500.

63.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

64.     From on or about January 1, 2018, until on or about October 31, 2018, Plaintiff was paid a cash salary of $550 per week.

65.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

66.     From on or about November 1, 2018, until on or about March 20, 2019, Plaintiff was paid a cash salary of $700 per week.

67.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

68.     From on or about June 6, 2019, until on or about January 31, 2020, Plaintiff was paid a cash salary of $750 per week.

69.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

70.     From on or about February 1, 2020, until on or about September 30, 2020, Plaintiff was paid a weekly wage of $775.

71.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

72.     From on or about October 1, 2020, until on or about February 28, 2021, Plaintiff was paid a cash salary of $992 per week.

73.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

74.     From on or about March 1, 2021, until on or about May 2, 2021, Plaintiff was paid a cash salary of $775 per week.

75.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

76.     From on or about May 22, 2021, until on or about October 31, 2021, Plaintiff was paid a cash salary of $850 per week.

77.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

78.     From November 1, 2021 until on or about February 28, 2022, Plaintiff was paid a cash salary of $992 per week.

79.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

80.     From on or about March 1, 2022 until on or about June 26, 2022, Plaintiff was paid a cash salary on $850 per week.

81.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

82.     From on or about June 27, 2022, until on or about August 25, 2022, Plaintiff was paid a cash salary of $900 per week.

83.     This salary was not inclusive of overtime.  Rather, it was just for the first 40 hours that he worked.

84.     Defendants failed to furnish Plaintiff with accurate statements of wages, hours worked, rates paid and gross wages.

85.     When Plaintiff began working as a cook at the restaurant, Defendants failed to pay Plaintiff overtime in compliance with the FLSA and the NYLL.

**Defendants' Unlawfully Retaliate Against Plaintiff for Protected Activity**

86.     On September 21, 2022, Plaintiff, through his counsel, sent a letter to Defendants (along with a draft complaint to be filed in the Eastern District of New York) advising of the wage violations in connection with his employment to ascertain whether a resolution can be reached prior to initiating litigation (the "Letter").

87.     On September 26, 2022, after Defendants received the Letter, they unlawfully evicted Plaintiff in response to Plaintiff's protected activity.

**Defendants' Violations of the Wage Theft Prevention Act**

88.     The NYLL and Wage Theft Prevention Act requires employers to provide all employees with a written notice of wage rates.

89.     Throughout the relevant time period, Defendants paid Plaintiff's wages without any accompanying statement listing the overtime rate or rates of pay, the number of regular hours worked and the number of overtime hours worked, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

90.     Plaintiff was never given a notice in English and his native language containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" named used by the employer;

the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

## COUNT ONE
### Fair Labor Standards Act - Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective Plaintiffs)

91.     Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, realleges and incorporates by reference all allegations in all preceding paragraphs.

92.     Defendants were required to pay Plaintiff and the FLSA Collective Plaintiffs overtime wages at a rate of one and one-half (1.5) times their regular rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 209, *et seq*.

93.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

94.     Defendants have willfully failed to pay Plaintiff and the FLSA Collective Plaintiffs the appropriate overtime premiums for all hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations.

95.     Defendants' unlawful conduct has been willful and intentional.  Defendants are aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Plaintiffs.

96.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

97.     Due to Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Plaintiffs are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

### COUNT TWO
### Fair Labor Standards Act - Retaliation
### (Brought on behalf of Plaintiff)

98.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

99.     As set forth herein, Plaintiff engaged in protected activity once he requested his unpaid wages from Defendants in the Letter.

100.    Upon receipt of the Letter, Defendants evicted Plaintiff from the apartment they rented to him..

101.    Based on the foregoing, Plaintiff is entitled to damages from Defendants for their violations of FLSA §215, including back pay, emotional distress damages, penalties available under the law, and attorneys' fees and costs.

### COUNT THREE
### New York Labor Law - Unpaid Overtime
### (Brought on behalf of Plaintiff)

102.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

103.    Defendants have failed to pay Plaintiff the proper overtime wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

104.    Through their knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of forty hours per workweek, Defendants have willfully violated the

NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

105.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

## COUNT FOUR
### New York Labor Law - Retaliation
### (Brought on behalf of Plaintiff)

106.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107.    As set forth herein, Plaintiff engaged in protected activity once he requested his unpaid wages from Defendants in the Letter.

108.    Upon receipt of the Letter, Defendants evicted Plaintiff from the apartment they rented to him..

109.    Based on the foregoing, Plaintiff is entitled to damages from Defendants for their violations of NYLL §215, including back pay, emotional distress damages, penalties available under the law, and attorneys' fees and costs.

## COUNT FIVE
### New York Labor Law – Failure to Provide Annual Wage Notices
### (Brought on behalf of Plaintiff)

78.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

79.    Defendants have willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour,

14

shift, day week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

80.     Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations.

81.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each work day that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars, together with costs and reasonable attorneys' fees, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**COUNT SIX**
**New York Labor Law - Failure to Provide Wage Statements**
**(Brought on behalf of Plaintiff)**

82.      Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

83.     Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if

applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

84.     Through their knowing or intentional failure to provide Plaintiff with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

85.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each work day that the violation occurred, or a total of five thousand dollars each, together with costs and reasonable attorneys' fees, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**COUNT SEVEN**
**(Disability Discrimination in Violation of the NYSHRL)**
**(Brought on behalf of Plaintiff)**

78.      Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

79.     Sushi Palace violated the NYSHRL when it terminated Plaintiff's employment because of his disabilities and/or perceived disabilities.

80.     Sushi Palace acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

81.     As a result of Sushi Palace unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT EIGHT**
**(Aiding and Abetting Discrimination in Violation of the NYSHRL)**
**(Brought on behalf of Plaintiff)**

78.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

79.     As a result of the aforementioned actions, the Individual Defendants discriminated against Plaintiff on account of his disability and/or perceived disability with respect to the terms, conditions and privileges of his employment in violation of the NYSHRL.

80.     The Individual Defendants violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

81.     The Individual Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

82.     As a result of the Individual Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.     Designation of this action as a collective action on behalf of the FLSA Collective Members (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6, §§ 198;

C.      Unpaid overtime pay and liquidated damages permitted by law pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations;

D.      Awarding Plaintiff compensatory damages, lost wages, emotional distress damages, liquidated damages, interest, attorneys' fees and costs for his retaliation claims under the FLSA and NYLL;

E.      Awarding Plaintiff compensatory damages, lost wages, emotional distress damages, liquidated damages, interest, attorneys' fees and costs for his disability discrimination claims under the NYSHRL;

F.      Statutory penalties of fifty dollars for each work day that Defendants have failed to provide Plaintiffs with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

G.      Statutory penalties of two hundred fifty dollars for each work day that Defendants have failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided by for by NYLL, Article 6 § 198;

H.      Prejudgment interest pursuant to the NYLL and CPLR § 5004;

I.      Post-judgment interest pursuant to 28 U.S.C. § 1961;

J.      An injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

K.      Reasonable attorneys' fees and costs of the action; and

L.      Such other and further relief as this Court deems just, equitable and proper.

Dated:  September 27, 2022
        Syosset New York

Respectfully submitted,

**THE LAW OFFICES OF YALE POLLACK**

By:      */s/ Yale Pollack*
         Yale Pollack, Esq.
         66 Split Rock Road
         Syosset, New York 11791
         (516) 634-6340
         ypollack@yalepollacklaw.com

**THE LAW OFFICES OF JACOB ARONAUER**

By:      */s/ Jacob Aronauer*
         Jacob Aronauer, Esq.
         225 Broadway, 3rd Floor
         New York, New York 10007
         (212) 323-6980
         jaronauer@aronauerlaw.com

         *Attorneys for Plaintiff*